**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000784**
**14-DEC-2016**
**08:21 AM**

NO. CAAP-12-0000784

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SHEILA J. BELARMINO, Claimant-Appellee-Appellant,
v.
STATE OF HAWAI'I, DEPARTMENT OF EDUCATION,
Employer-Appellant-Appellee, Self-Insured


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2010-041(K); (4-03-10035))


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, and Leonard and Reifurth, JJ.)

In this workers' compensation case, Claimant-Appellee-Appellant Sheila J. Belarmino appeals from the Decision and Order filed by the Labor and Industrial Relations Appeals Board ("Board") on August 14, 2012 (the "August 14, 2012 Decision and Order"). The Director of the Department of Labor and Industrial Relations Disability Compensation Division ("Director") originally adjudicated Belarmino's claims against Employer-Appellant-Appellee State of Hawai'i, Department of Education on February 4, 2010 ("February 4, 2010 Decision") for a lower back injury sustained during a work-related incident on April 9, 2003 ("April 9, 2003 Injury").[1]

---

[1]  The Director's February 4, 2010 Decision stated that:

> The Director finds, based upon the Findings of Fact and Principles of Law, the claimant's average weekly wages will be increased to $387.90.

> The Director finds, based upon the Findings of Fact and

In its August 14, 2012 Decision and Order, the Board modified the Director's February 4, 2010 Decision by concluding that Belarmino's average weekly wage at the time of her April 4, 2003 Injury was $332.23; Belarmino was entitled to temporary total disability benefits from April 12, 2003 through March 15, 2009; and Belarmino sustained 10% permanent partial disability of the whole person as a result of her April 9, 2003 Injury. The Board affirmed the Director's conclusion that Belarmino did not present a prima facie case for oddlot permanent total disability.

On appeal, Belarmino alleges that the Board erred in: (1) modifying the end date of her temporary total disability benefits period from December 17, 2009 to March 15, 2009 because Employer failed to issue a notice of intent to terminate as required by Hawaii Revised Statutes ("HRS") section 386-31(b); (2) determining that she failed to present a prima facie case for odd-lot permanent total disability; and (3) failing to find that she sustained a psychological injury and permanent psychological disability as a result of her April 9, 2003 Injury.[2] We vacate in part and affirm in part the Board's August 14, 2012 Decision and Order.

_____

Principles of Law, the claimant is entitled to temporary total disability benefits payable by the employer from 4/9/2003 through 12/17/2009. The Director determines that although Vocational Rehabilitation services were terminated effective 3/15/2009, the employer failed to notice the claimant of their intent to terminate temporary total disability benefits pursuant to section 386-31(b), HRS.

The Director finds, based upon the Findings of Fact and Principles of Law, that the claimant is not entitled to permanent total disability benefits. The Director finds the claimant has not presented evidence to substantiate that she meets "odd-lot" criteria nor has she presented evidence to substantiate she is permanently, totally disabled from working.

The Director finds, based upon the Findings of Fact and Principles of Law, the claimant is entitled to 7% permanent partial disability of the whole person (low back). The Director credits Dr. Sasaki's 5/15/2009 report and the claimant's testimony.

[2] Belarmino's points of error have been re-written and re-ordered for clarity.

I.   STANDARD OF REVIEW

          The  standard  of  review  for  Board  decisions  is  well
established:

> Appellate review of a [Board] decision is governed by
> HRS § 91-14(g) (1993), which states that:
>
> Upon review of the record the court may affirm the
> decision  of  the  agency  or  remand  the  case  with
> instructions for further proceedings; or it may reverse
> or modify the decision and order if the substantial
> rights of the petitioners may have been prejudiced
> because  the  administrative  findings,  conclusions,
> decisions, or orders are:
>
> (1)  In  violation  of  constitutional  or  statutory
> provisions; or
>
> (2) In excess of the statutory authority or jurisdiction
> of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5)  Clearly  erroneous  in  view  of  the  reliable,
> probative, and substantial evidence on the whole record;
> or
>
> (6) Arbitrary, or capricious, or characterized by abuse
> of  discretion  or  clearly  unwarranted  exercise  of
> discretion.
>
> We have previously stated:
>
> [Findings of Fact] are reviewable under the clearly
> erroneous standard to determine if the agency decision
> was clearly erroneous in view of reliable, probative,
> and substantial evidence on the whole record.
>
> [Conclusions of Law] are freely reviewable to determine
> if  the  agency's  decision  was  in  violation  of
> constitutional or statutory provisions, in excess of
> statutory  authority  or  jurisdiction  of  agency,  or
> affected by other error of law.
>
> A [Conclusion of Law] that presents mixed questions of
> fact and law is reviewed under the clearly erroneous
> standard because the conclusion is dependent upon the
> facts and circumstances of the particular case. When
> mixed  questions  of  law  and  fact  are  presented,  an
> appellate  court  must  give  deference  to  the  agency's
> expertise and experience in the particular field. The
> court should not substitute its own judgment for that of
> the agency.
>
> *Igawa v. Koa House Restaurant*, 97 Hawaiʻi 402, 405-06, 38 P.3d
> 570,  573-74  (2001)  (quoting  *In  re  Water  Use  Permit
> Applications*, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000))
> (internal quotation marks omitted).
>
> [A Finding of Fact] or a mixed determination of law and
> fact is clearly erroneous when (1) the record lacks

3

> substantial evidence to support the finding or
> determination, or (2) despite substantial evidence to
> support the finding or determination, the appellate
> court is left with the definite and firm conviction that
> a mistake has been made. We have defined "substantial
> evidence" as credible evidence which is of sufficient
> quality and probative value to enable a person of
> reasonable caution to support a conclusion.
>
> In re Water Use Permit Applications, 94 Hawai'i at 119, 9 P.3d
> at 431 (citations omitted) (internal quotation marks omitted).

Pulawa v. Oahu Constr. Co., 136 Hawai'i 217, 224-25, 361 P.3d
444, 451-52 (2015).

II.   BACKGROUND

A.    Belarmino's claim-related medical history.

Belarmino was employed by Employer as a permanent part-time school custodian for Wilcox Elementary School since July 22, 1996.  On April 9, 2003, Belarmino sustained a work-related injury to her lower back "[w]hile lifting [the] cover of [a] grease trap and leaning down to suck up [the] waste with [a] wet vacuum. . . ."  Belarmino testified that the grease trap was too heavy for her to lift alone.  While cleaning the trap with her co-worker, her co-worker inadvertently lost his grip on the trap, and she was forced to bear the full weight.  Belarmino stated that she "felt a snap. . . . [i]n my back, my neck, and it went down to my legs."  It is undisputed in this appeal that Belarmino's April 9, 2003 Injury, where Belarmino sustained a lower back injury, arose out of and in the course of Belarmino's employment.  On April 22, 2003, Employer prepared a WC-1 Employer's Report of Industrial Injury form, and later accepted liability for Belarmino's work injury.

Following the April 9, 2003 Injury, Belarmino sought medical care from Dr. Robert J. Teichman, at the Kauai Medical Clinic, and Dr. William A. Renti Cruz, her primary care physician.  Dr. Renti Cruz referred Belarmino for physical therapy.  Belarmino was then referred to Dr. Heather Hopkins, a physiatrist, who recommended more physical therapy.

On November 3, 2003, Dr. Hopkins noted in a progress record that Belarmino continued to have back pain, and no longer attended physical therapy because she was not making significant

progress. Dr. Hopkins further noted that Belarmino wanted to return to work, but that she was not able to return to the heavy lifting required by her current job. Dr. Hopkins' objective exam stated the following: "Sensation intact to light touch to both lower extremities. Strength within normal limits, both lower extremities. Trunk range of motion within functional limits but painful on return to upright position from flexion. Painful with extension and posterior element over pressure. Gait, somewhat forward flexed posture, tends to guard the back." Dr. Hopkins then recommended that Belarmino "return to work in a light duty type setting[, and i]f her current work environment is unable to provide light duty, vocational rehabilitation should be considered to retrain patient for another position that will allow less lifting." Dr. Hopkins opined that Belarmino "has reached maximum medical improvement[, and t]here are no further treatment options I can offer. . . ."

In an undated evaluation report reviewed by Dr. Robert Sussman, Teresita de Dios, R.N., the evaluator, opined that, based upon functional testing, Belarmino could work at a sedentary level job. Between 2003 and 2005, Belarmino continued to see Dr. Hopkins and Dr. Renti Cruz for treatment and medication related to the April 9, 2003 Injury.

On January 10, 2005, Dr. Lorne K. Direnfeld, a neurologist, examined Belarmino for an independent medical examination ("IME") at Employer's request. Belarmino complained to Dr. Direnfeld that her back was "very sore and very uncomfortable . . . in my back and okole . . . pains running down my legs, front and back . . . like somebody's grabbing me." She further stated that "she is never comfortable sitting[,] . . . has difficulty standing comfortably for more than 10 minutes[, and] . . . has difficulty lifting a three-cup rice cooker with rice in it." Belarmino informed Dr. Direnfeld that she did not want to return to work for Employer, she did not know what else she could do, but was "willing to try anything."

Dr. Direnfeld made the following diagnoses, "1. Pain disorder associated with both psychological factors and a general medical condition, versus pain disorder associated with

psychological factors. 2. Chronic lumbosacral strain." Dr. Direnfeld further opined that data suggests that in Belarmino's case "diagnosis of pain disorder associated with psychological factors is more likely than the diagnosis of pain disorder associated with both psychological factors and a general medical condition[.]" Dr. Direnfeld stated that Belarmino reached maximum medical stability as of her visit to Dr. Hopkins on January 15, 2004, and that there was "no disfigurement related to the effects of the 4/09/03 injury."

Between 2005-2007, Belarmino sought the medical expertise of Dr. Dennis Scheppers for continued care of her April 9, 2003 Injury. On February 20, 2007, Belarmino underwent a Functional Capacity Evaluation ("FCE") in order to determine her readiness to return to work, and assess current functional abilities. According to Florian Flores, P.T., who conducted the FCE, Belarmino "may be able to work below SEDENTARY Physical Demand Level (PDL) for an 8 hour day; however, there were indications of submaximal effort during the FCE[,]" and therefore, Flores estimated that Belarmino should be able to work at the Sedentary-light PDL. Flores also noted that Belarmino may not have exerted her best effort during the functional capacity test.

On May 1, 2007, Dr. Scheppers submitted an Estimated Capacity & Limitation Form to Belarmino's vocational rehabilitation provider. On the form, Dr. Scheppers provided Belarmino's various physical limitations, which included an assessment that Belarmino could frequently lift up to 10 pounds, but could not bend, squat, crawl, or climb, among other physical activities.

On April 8, 2009, Dr. Vern K. Sasaki, an occupational medical physician, conducted an IME on Belarmino at Employer's request. Dr. Sasaki noted that Belarmino's pain behaviors and subjective complaints were not supported by objective findings, and were corroborated by Dr. Direnfeld's previous IME, Dr. Hopkins' assessment, and the FCE conducted by Flores. Dr. Sasaki diagnosed Belarmino with "Pain disorder associated with psychological factors and a general medical condition" and

6

"Lumbosacral strain/sprain and myofascial pain." Belarmino informed Dr. Sasaki that she had "constant achy low back pain[, and that] the pain averages 8 out of 10 on a scale of 0 to 10." Dr. Sasaki also noted that Belarmino resisted participation in a physical therapy program, but she should still be encouraged to conduct home-based stretching and strengthening exercises. Dr. Sasaki opined that Belarmino's condition was stable, and that she reached maximum medical improvement. Dr. Sasaki rated Belarmino at 5% whole person impairment as a representation of Belarmino's current impairment.

On June 12, 2009, Dr. Robert J. Brown, psychologist, conducted a permanent partial disability ("PPD") examination on Belarmino. Dr. Brown states that he originally examined Belarmino on December 20, 2005 for an IME. At that time, he opined that "psychological factors have played a role in delaying her overall recovery and prolonged disability." Following a diagnostic interview with Belarmino, Dr. Brown opined that Belarmino appeared to be of low average intelligence, and showed symptoms of exaggeration and overreaction. He further stated that it appeared that Belarmino "want[ed] me to conclude that psychological factors are not involved or play only a minor role in her chronic low back pain disorder." Dr. Brown further stated that "[i]t is difficult to tell if she truly believes her pain is a 10, or if she is intentionally exaggerating her pain for secondary gain reasons." Dr. Brown stated that Belarmino's overall whole person rating "is considered mild with regards to classes of impairment due to mental and behavioral disorders[,]" and further opined that Belarmino had 10% impairment in her activities of daily living.

The Board concluded that it would not credit Dr. Schepper's report as a certification of temporary total disability. Finding of fact ("FOF") 18 in the August 14, 2012 Decision and Order states:

> 18. On August 3, 2009, Claimant saw Dr. Scheppers. She rated her pain at 10/10. Dr. Scheppers noted that Claimant was not then employed. He instructed Claimant to follow up in 4 weeks for medication refill or sooner if needed.

> Dr. Scheppers completed a WC-2 Physician's Report form dated August 4, 2009, which noted that Claimant's work accident resulted in disability for work for the period July 30, 2009 through October 30, 2009. He noted that Claimant was treated on June 10, 2009 with a prescription only and that he examined Claimant on August 3, 2009.
>
> The Board does not credit Dr. Schepper's WC-2 Physician's Report as a certification of temporary total disability, because Claimant['s] condition had been permanent, stable, and stationary as of November 2003, because the certification seeks to verify or validate disability retroactively, and because it extends to a period longer than one month.

On November 6, 2009, Dr. Scheppers submitted an Interim WC-2 Physician's Report, and checked off "None" in the portion of the form asking him to describe any permanent defect or disfigurement.

B.     Procedural history of Belarmino's claim.

On April 22, 2003, Employer prepared a WC-1 Employer's Report of Industrial Injury form for Belarmino's April 9, 2003 Injury. On July 20, 2009, Belarmino filed a request for a hearing before the Director. Belarmino cited permanent disability issues, the period of temporary disability, and the extent of permanent total disability as the reasons for her hearing request. In her supporting position statement, Belarmino related that Employer voluntarily paid temporary total disability, and the dates paid were from April 13, 2003, until March 15, 2009, ten days after the end of vocational rehabilitation services.[3/] On December 17, 2009, the Director held a hearing addressing the following issues:

> What is the claimant's average weekly wages?
>
> Is the claimant entitled to temporary total disability?
>
> Is the claimant entitled to permanent total disability under the "odd lot" doctrine?

---

[3/]     Employer voluntarily paid Belarmino's temporary total disability at a weekly compensation rate of $189.62. The Director later determined that Employer should pay Belarmino $258.61 per week for temporary total disability. It does not appear that Employer ever adjusted its payments to Belarmino, or made additional payments to Belarmino. However, Belarmino does not raise this issue on appeal, and this court does not need to further address this issue. *Kakinami v. Kakinami*, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing *In re Guardianship of Carlsmith*, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007)) (noting that this court may "disregard a particular contention if the appellant makes no discernible argument in support of that position").

Is the claimant entitled to permanent partial disability?

On February 4, 2010, the Director issued the Decision, and concluded that:

1.  Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services, and supplies as the nature of the injury may require.

2.  Claimant's average weekly wages is $387.90.

3.  Section 386-31(b), HRS, said employer shall pay to claimant weekly compensation of $258.61 for temporary total disability from work beginning (waiting period: 4/9/2003 through 4/11/2003) 4/12/2003 through 12/17/2009 for 348.8571 weeks, for a total of $90,217.94.

4.  Section 386-32(a), HRS, said employer shall pay to claimant weekly compensation of $301.72 for 7% permanent partial disabilty of the whole person beginning 12/18/2009 for 41.9833 weeks, for a total of $12,667.20.

5.  No disfigurement resulted from this accident.

On February 9, 2010, Employer appealed from the February 4, 2010 Decision to the Board. In that appeal, Employer raised the issue regarding the amount of Belarmino's average weekly wages. The Board permitted Belarmino to raise the following issues to be addressed on appeal:

a.  What is the period of temporary total disability resulting from the work injury of April 9, 2003; and

b.  What is the extent of permanent disability resulting from the work injury of April 9, 2003.

A trial before the Board was set for April 13, 2011.

On April 13, 2011, two witnesses testified during trial: Nolan Yonekura, a pre-audit clerk for the Department of Education, payroll section, was called as Employer's sole witness, and Belarmino. At trial Belarmino explained how the April 9, 2003 Injury occurred, and described the medical treatment and vocational rehabilitation services she received following the injury.

The Board's August 14, 2012 Decision and Order included FOF and conclusions of law ("COL"), which state, in pertinent part, as follows:

The Board makes the following Conclusions of Law. . . .

. . . .

9

2. The Board concludes that the period of temporary total disability resulting from Claimant's April 9, 2003 work injury was (waiting period: April 9, 2003 through April 11, 2003) April 12, 2003 through March 15, 2009, at which point Claimant's VR case was closed.

3. With respect to permanent disability, the Board affirms the Director's February 4, 2010 decision. The Board concludes that Claimant is neither permanently and totally disabled on a medical basis nor permanently and totally disabled on an odd-lot basis.

Rather, the Board concludes that, based on the opinions in the record, beginning December 18, 2009 Claimant sustained ten percent (10%) permanent partial disability of the whole person for her April 9, 2003 low back injury.

Where, as in the instant case, no physicians have credibly opined that Claimant is permanently and totally disabled, Claimant may avail herself of the odd-lot doctrine or rule. "Under the odd-lot doctrine, an injured employee may be considered permanently and totally disabled if he or she is unable to obtain employment because of work-related permanent partial disability combined with such factors such as age, education, and work experience." *Bumanglag v. Oahu Sugar Co.*, 78 Hawaiʻi 275, 281 (1995) (citing *Yarnell v. City Roofing, Inc.*, 72 Haw. 272, 275 (1991)).

The odd-lot doctrine weighs multiple factors and where a claimant demonstrates *prima facie* belonging in the odd-lot category, the burden of proving employability shifts to the employer.

Claimant did not present a *prima facie* case that she should be placed in the odd-lot category of permanent total disability.

Belarmino timely appealed from the August 14, 2012 Decision and Order to this court.

## III. DISCUSSION

A. The Board erred in modifying the end date of Belarmino's temporary total disability benefits from December 17, 2009 to March 15, 2009.

Citing to HRS section 386-31(b), Belarmino asserts that the Board erred in modifying the end date of her temporary total disability benefits. Specifically, Belarmino challenges FOF 15[4] and COL 2.[5] Belarmino's argument has merit.

---

[4] FOF 15 states, "[t]he Board finds Claimant entitled to temporary total disability benefits through March 15, 2009."

[5] COL 2 states, "[t]he Board concludes that the period of temporary total disability resulting from Claimant's April 9, 2003 work injury was (waiting period: April 9, 2003 through April 11, 2003) April 12, 2003 through March 15, 2009, at which point Claimant's VR case was closed."

10

Once an employer has begun paying temporary total disability benefits to an employee, "[t]he payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work." Haw. Rev. Stat. § 386-31(b) (Supp. 2009). Because the employee's ability to resume work may sometimes be disputed, the statute further provides that when the employer believes that the employee is able to resume work, "the employer shall notify the employee and the director in writing of an intent to terminate the benefits at least two weeks prior to the date when the last payment is to be made." *Id.* The notice must explain the reason for stopping payment, and must further "inform the employee that the employee may make a written request to the director for a hearing if the employee disagrees with the employer." *Id.* In addition, the Hawaii Administrative Rules ("HAR") reiterate that a written notice of intent to terminate temporary total disability benefits must be sent to the director and the employee "in every case" unless the employee has actually returned to work, in which case a notice need not be sent. Haw. Admin. R. § 12-10-26.

The record establishes that Employer paid temporary total disability benefits to Belarmino from April 12, 2003 until March 15, 2009. Employer terminated temporary total disability benefits on March 15, 2009, ten days after Belarmino's vocational rehabilitation services ended, without providing Belarmino or the Director with written notice, as required by HRS § 386-31(b). During the December 17, 2009 hearing, the Director found that because the benefit payments had never been properly terminated, they had to be continued until he ordered otherwise, an event that he deemed to occur upon the date of the hearing.

Employer argues that Belarmino was not entitled to the extended payments between March 15, 2009 and December 17, 2009 because the only redress available is through the Director ordering Employer to pay into a special compensation fund under HRS section 386-31(b)[6] or face other penalties pursuant to HRS

---

[6]     HRS section 386-31(b) states in relevant part, "[a]n employer or insurance carrier who fails to comply with this section shall pay not more than $2,500 into the special compensation fund upon the order of the director,

section 386-92.[2/] Accordingly, Employer asserts that the Director could have chosen to subject Employer to penalties, but did not do so, and that the extended payments that Belarmino argues above is not the appropriate remedy. Adopting December 17, 2009 as the termination date of Belarmino's temporary total disability benefits is not a penalty, however, but the necessary consequence of applying HRS section 386-31(b). Therefore Employer's argument is without merit.

The Board erred in modifying Belarmino's temporary total disability benefits end date from December 17, 2009 to March 15, 2009 because the record lacks substantial evidence to support this conclusion. *See Pulawa,* 136 Hawai'i at 225, 361 P.3d at 452. As the Director noted in the February 4, 2010 Decision, Employer did not provide written notice of its intent to terminate Belarmino's temporary total disability benefits, as required by HRS section 386-31(b) and HAR section 12-10-26. *See Malahoff v. Saito,* 111 Hawai'i 168, 191, 140 P.3d 401, 424 (2006). Further, at the April 13, 2011 trial before the Board, Employer did not present evidence that it provided Belarmino with a written notice of intent to terminate her temporary total disability benefits, or in the alternative, that Belarmino returned to work, allowing for temporary total disability benefits to automatically end without notice. Haw. Admin. R. § 12-10-26. Accordingly, the Board erred in modifying the end date of Belarmino's temporary total disability benefits from December 17, 2009 to March 15, 2009.

B.    The Board did not err in determining that Belarmino failed to present a prima facie case for odd-lot permanent total disability.

In her second point of error, Belarmino contends that the Board erred by failing to apply the odd-lot doctrine to her

---

in addition to other penalties prescribed in section 386-92." Haw. Rev. Stat. § 386-31(b).

[2/]    HRS section 386-92 provides in relevant part, "there shall be added to the unpaid compensation an amount equal to twenty per cent thereof payable at the same time as, but in addition to, the compensation[.]" Haw. Rev. Stat § 386-92 (Supp. 2009).

case. Belarmino contests FOF 26[8/] and COL 3.[9/] In support of her argument, Belarmino refers to *Tsuchiyama v. Kahului Trucking and Storage, Inc.*, 2 Haw. App. 659, 638 P.2d 1381 (1982), *Yarnell v. City Roofing, Inc.*, 72 Haw. 272, 813 P.2d 1386 (1991), and Larson's Workers' Compensation treatise. However, this argument is without merit.

The odd-lot doctrine states that "where an employee receives a work-related permanent partial disability which combined with other factors such as age, education, experience,

---

[8/]    FOF 26 states:

    The Board finds that Claimant did not meet her burden in presenting a *prima facie* case that she should be placed in the odd-lot category of permanent total disability. Her age (date of birth: December 30, 1958), education (completed two years of high school), and experience (State employee for ten years preceding the date of accident) does not render her, in fact, unable to obtain employment. Rather, Claimant completed her VR Plan, which included training, and the reason for not obtaining employment was because of an abnormal and irregular labor market on Kauai. Yet, Claimant testified that she had not made any effort to seek employment for about two years after VR had closed.

[9/]    COL 3 provides:

    With respect to permanent disability, the Board affirms the Director's February 4, 2010 decision. The Board concludes that Claimant is neither permanently and totally disabled on a medical basis nor permanently and totally disabled on an odd-lot basis.

    Rather, the Board concludes that, based on the opinions in the record, beginning December 18, 2009 Claimant sustained ten percent (10%) permanent partial disability of the whole person for her April 9, 2003 low back injury.

    Where, as in the instant case, no physicians have credibly opined that Claimant is permanently and totally disabled, Claimant may avail herself of the odd-lot doctrine or rule. "Under the odd-lot doctrine, an injured employee may be considered permanently and totally disabled if he or she is unable to obtain employment because of work-related permanent partial disability combined with such factors such as age, education, and work experience." *Bumanglag v. Oahu Sugar Co.*, 78 Hawai'i 275, 281 (1995) (citing *Yarnell v. City Roofing, Inc.*, 72 Haw. 272, 275 (1991)).

    The odd-lot doctrine weights multiple factors and where a claimant demonstrates *prima facie* belonging in the odd-lot category, the burden of proving employability shifts to the employer.

    Claimant did not present a *prima facie* case that she should be placed in the odd-lot category of permanent total disability.

etc., renders him, in fact, unable to obtain employment, he is entitled to be treated as being permanently totally disabled." *Tsuchiyama*, 2 Haw. App. at 660-61, 638 P.2d at 1382 (where this court held that the Board did not clearly err in determining that claimant's disability qualified him as an odd-lot worker based on the pain claimant experienced when he returned to work, limitations of motion and ability, age, education, his limp, and his difficulty with the English language); *Yarnell*, 72 Haw. at 275, 813 P.2d at 1388 ("If the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant." (quoting 2 A. Larson, *Workmen's Compensation Law* § 57.61(c) at 10-178 (1989))). The employee bears the initial burden of establishing a prima facie case that he or she falls within the odd-lot category. *Tsuchiyama*, 2 Haw. App. at 661, 638 P.2d at 1382. If the employee establishes a prima facie case that he or she falls within the odd-lot category, the burden then shifts to the employer "to show that some kind of suitable work is regularly and continuously available to the claimant." *Yarnell*, 72 Haw. at 275, 813 P.2d at 1388 (where the Hawai'i Supreme Court concluded that the Board improperly put the burden on the claimant to prove that he was unable to work as a result of the work injury, and did not answer the question of whether the claimant properly established a prima facie case). While it is a question of fact as to whether a person falls into an odd-lot category, *id.* at 276, 813 P.2d at 1389 (citing *Worker's Comp. Claim of Cannon v. FMC Corp.*, 718 P.2d 879, 885 (Wyo. 1986)), shifting the burden of proof is a question of law. *Id.*

In this case, the Board's determination that Belarmino did not establish a prima facie case that she fell within the odd-lot doctrine is not clearly erroneous. Based on the Board's findings and evidence submitted, Belarmino is capable of performing at least light duty or sedentary work. Dr. Hopkins, Dr. Sussman, and Mr. Flores all concluded that Belarmino is

qualified for work, at least at a sedentary or light duty capacity. Dr. Direnfeld and Dr. Scheppers opined that Belarmino did not sustain permanent impairment or disfigurement related to the work injury. Dr. Scheppers provided vocational rehabilitation services and an assessment of Belarmino's abilities and limitations. In his assessment, Dr. Scheppers stated that although Belarmino was unable to bend, squat, crawl, or climb, Belarmino could lift and carry up to ten pounds frequently, sit for six hours, stand for an hour, walk for an hour, and use her hand for six hours. Dr. Sasaki noted that Belarmino resisted participation in an active physical therapy program, and subjective complaints were not consistent with objective findings. Likewise, Dr. Direnfeld opined "that the data suggested the diagnosis of pain disorder associated with psychological factors was more likely than that of pain disorder associated with both psychological factors and a general medical condition." The Board also noted that it did not credit Dr. Brown's opinions on permanent impairment due to Dr. Brown's acknowledgment of Belarmino's refusal to seek psychological treatment for financial gain. With regard to this point of error, Belarmino only challenges FOF 26 on appeal. FOFs not challenged on appeal are binding on this court. *State v. Kiese*, 126 Hawai'i 494, 502, 273 P.3d 1180, 1188 (2012) (citing *Kelly v. 1250 Oceanside Partners*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006)).

The Board also determined that Belarmino was born on December 30, 1958; that she had an 11th grade education; and that she was a State employee for ten years preceding the date of the accident. The Board noted Belarmino's former employment as a custodian for the County of Kauai, as a car cleaner for Budget Rent-A-Car, and an adult supervisor during lunch periods at Wilcox School prior to her employment as a custodian for Employer. Although Belarmino argues that her weak educational attainment, limited job skills, and diminished physical and mental capacities demonstrate her qualifications for odd-lot status, the Board did not find that Belarmino possessed any of these traits, and this court "give[s] deference to the [Board]'s

assessment of the credibility of witnesses and the weight the [Board] gives to the evidence." *Moi v. State, Dep't of Pub. Safety*, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008); *Nakamura v. State*, 98 Hawai'i 263, 268, 47 P.3d 730, 735 (2002) ("It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.") (quoting *Igawa v. Koa House Restaurant*, 97 Hawai'i 402, 409-10, 38 P.3d 570, 577-78 (2001))).

The Board found that during vocational rehabilitation, Belarmino was provided with a private tutor for desk job computer training, and observed that in the February 6, 2009 Final Report prepared by Patti Inoue, C.R.C., Belarmino's vocational rehabilitation provider, Belarmino was encouraged to continue to submit applications for work within her physical capabilities. Further, the Board noted that Belarmino was able to type, but not well; had a computer at home, but did not know how to use email; and was able to use a calculator to add numbers. Although the Board noted that according to Ms. Inoue, Belarmino was unable to obtain employment due to a poor labor market on Kaua'i, it determined that Belarmino stopped looking for employment in 2009, after her vocational rehabilitation services ended.

This case is distinguishable from *Tsuchiyama*, where, in addition to having only a high school degree and sustaining between 16% and 25% permanent disability of the whole person, claimant also suffered severe pain after sitting for a relatively short time, walked with a noticeable limp, had difficulty with the English language, and continued to pursue employment, even after retirement. *Tsuchiyama*, 2 Haw. App. at 660, 638 P.2d at 1382. In this case, the Board concluded that Belarmino sustained 10% permanent partial disability of the whole person, that she completed her vocational rehabilitation computer training class, that she was able to sit for 6 hours, and had no permanent impairment or disfigurement related to the work injury. Further, the Board made no finding that Belarmino struggled with the

16

English language, and also determined that Belarmino stopped looking for work in 2009, two years before her trial. Accordingly, the Board did not err in determining that Belarmino failed to present a prima facie case for odd-lot permanent total disability. Because Belarmino did not meet her prima facie burden, the burden did not shift to Employer to prove the existence of regular suitable employment.

      C.    The Board did not err when it failed to find that Belarmino sustained a psychological injury and permanent psychological disability as a result of her April 9, 2003 Injury.

In her final point of error, Belarmino argues that the Board erred when it failed to find that Belarmino sustained a psychological injury and permanent psychological disability. Belarmino challenges the final paragraph of FOF 17,[10] and the entirety of COL 3,[11] and requests that this court determine that she is entitled to an additional 5% permanent partial disability of the whole person due to her alleged mental health condition. We decline Belarmino's invitation.

Belarmino argues that the Board incorrectly determined the credibility of Dr. Brown and his medical report. Although we defer to the Board's assessment of the credibility of witnesses

---

[10]    FOF 17 states, in relevant part:

        Dr. Brown opined that Claimant's 'overall whole person rating is considered mild with regards to classes of impairment due to mental and behavioral disorders.' He opined that Claimant had mild impairment (10%) in her activities of daily living and adaptation.

        He stated that Claimant's "prognosis to ever return to work is now poor and until she is rated as permanent and stable she has little or no motivation to seek psychological or psychiatric treatment. I therefore am in [agreement] that her condition is permanent, stable and ratable."

        The Board does not credit Dr. Brown's opinions on permanent impairment, which were provided despite his acknowledgment of Claimant's refusal for reasons of financial gain to seek psychological treatment.

Belarmino challenges only the last paragraph of FOF 17.

[11]    COL 3 states in relevant part that "the Board concludes that, based on the opinions in the record, beginning December 18, 2009 Claimant sustained ten percent (10%) permanent partial disability of the whole person for her April 9, 2003 low back injury."

and the weight of the evidence, we review the Board's FOFs under the clearly erroneous standard and its COLs de novo. *Moi*, 118 Hawai'i at 242, 188 P.3d at 756. The final paragraph in FOF 17 does not address the extent of Belarmino's entitlement to permanent partial disability benefits. Nevertheless, that paragraph is supported by the findings included in the prior two paragraphs, which are unchallenged. Among other things, Dr. Brown's report stated that Belarmino had not sought psychiatric or psychological treatment despite his recommendation that she do so, that Belarmino had no motivation to seek treatment until she was rated, and that he had considered the four main categories of mental health functions provided in the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (5th ed.) and found that Belarmino had mild impairment in two categories and no impairment in the other two categories. Although concluding that Belarmino's impairment was "mild," Dr. Brown's report appeared to contradict that conclusion in light of his belief that Belarmino would benefit from more treatment and that she was exaggerating her pain. In light of that and in view of the fact that Dr. Brown did not provide a specific rating amount, the Board did not clearly err in finding that Dr. Brown's report did not provide a basis for concluding that Belarmino had yet to suffer a permanent psychological injury. Therefore, the final paragraph in FOF 17 is not clearly erroneous.

Accordingly, the Board did not err in concluding in COL 3 that Belarmino sustained a 10% permanent partial disability of the whole person from her April 9, 2003 Injury without mentioning Dr. Brown's opinions on Belarmino's mental health because the Board did not find Dr. Brown's opinions credible, and no other FOF discussed a permanent psychological disability from which the Board could conclude otherwise. Consequently, we do not reach Employer's contention that Belarmino was barred from raising the claim on appeal due to her failure to file a written claim to the Director under HRS section 386-82.

Based on the foregoing, we vacate in part and affirm in part the Board's August 14, 2012 Decision and Order. We remand

the case to the Board for entry of a decision and order consistent with this opinion.

DATED:  Honolulu, Hawai'i, December 14, 2016.

On the briefs:

Lowell K.Y. Chun-Hoon
(King, Nakamura & Chun Hoon)
for Claimant-Appellee-
Appellant.

James E. Halvorson and
Steve K. Miyasaka,
Deputy Attorneys General,
State of Hawai'i,
for Employer-Appellant-
Appellee.

Presiding Judge

Associate Judge

Associate Judge